Good morning. Good morning, Your Honor. May it please the Court. Toby Marshall of Terrell Marshall Law Group on behalf of the tenants. I'd like to reserve five minutes for rebuttal. Okay, keep your eye on the clock. We'll try to help you. Yes, sir. This case involves a straightforward challenge to the Washington Residential Landlord-Tenant Act. Section 375 of that act authorizes writs of restitution to be issued, served, and executed without adequate notice or a hearing. That violates the constitutional rights of tenants who are routinely evicted from their homes without due process. Counsel, let me ask you. Most of what we're going to be talking about deals with standing and ex parte young and a whole bunch of other issues of a procedural nature, but Judge Gilley suggested this is an as-is challenge as opposed to a facial challenge. Do you agree? We brought it both as a facial and an as-is challenge. You're going both ways on this? We are. Primarily, it really is a facial challenge. I think on the face of it, you can determine that the statute fails to provide the due process that's required when it comes to evictions. Let me get something out of the way right off the bat, which is that it's undisputed court misinterpreted the statute. The Washington Attorney General admits this on page one of its amicus brief, and the sheriff has declined to defend the court's construction. The key misinterpretation was that the district court determined that a hearing is required before writ of restitution issues under Section 375, but as the Washington Attorney General agrees, that is not the case. I don't think you need to spend much time on that. You seem clearly right in how you've read the statute, but could I ask you to jump in as to mootness? Of course. Because that's what's troubling me the most. Yes, sir. Let me start off with standing and then I'll address mootness. Of course, standing is determined at the time of the commencement of the litigation. In this case, that was July 5th of 2016. On that date, plaintiffs Moore and Shaw, who I'm going to focus on have been served with a writ of restitution that had not yet been executed. The writ was served on June 23rd of 2016, and when they filed their case on July 5th of 2016, they were asking the court to enjoin the execution of that writ. The writ remained valid until July 21st of 2016, so they had standing at the time that they filed the case. Until July what? July 21st. Exactly, July 21st, and that's at SCR 63. That was when the writ expired and the sheriff then returned it to the superior court. Their claims did subsequently become moot, so we concede that. Can I just, before you move on, in the context of, forgive me because I don't have the minutiae of the procedure, but you're served with whatever that notice is that says we're going to try to get you thrown out. You go into court to get the execution of the writ stayed. In that form, can you bring the kind of facial challenge that you want to bring in federal court in that state superior court proceeding? I think it's fair to say that in the unlawful detainer proceeding, Moore and Shaw could Yes, so certainly they could have raised that argument with the court, but I think the key answer to that is in Agua Caliente, this court said that just because you have the availability to challenge something in a state court doesn't prevent you under Ex Parte Young from going to a federal court and seeking the relief. From a mootness standpoint, why should our court be concerned? You've conceded that it's now moot, but you want to say that it's, you know, the duration of these proceedings is too short, and so therefore That's correct. And I guess, why should we be concerned about that? Because you will no doubt find somebody else to represent who's in this exact same circumstance, and why can't you just bring this facial challenge the next time somebody is in state superior court being faced with a 375 eviction proceeding? For two reasons. First being that it would just be one individual case after another. And as we've alleged in our complaint But not if you succeeded in getting the thing struck down on its face? Well, it's an individual unlawful detainer proceeding. It can't be converted into a class action. So I suppose for plaintiffs Moore and Shaw, they would have prevailed, but that would not at all benefit any of the other tenants that are out there facing this procedure every day. So you can't ask for kind of declaratory relief in that proceeding that says, Judge, we want you to declare that this thing is just invalid on its face. It's unconstitutional. It violates the federal due process clause. You can't get that relief? Well, my understanding is that you could certainly get that with respect to your claims in the unlawful detainer action. But the sheriff's not a defendant in that case, so there would be no relief that enjoins the sheriff from continuing to, with other judges, serve those writs, execute those writs with respect to other tenants. And this is happening all the time. So what you're saying is a superior court's ruling in one case won't bind anybody except for that superior court? That's exactly right. That particular judge? That's exactly right. And it's important, and that's why we've brought this case as a class action. That's why we're seeking the systemic injunctive and declaratory relief that we're seeking, is because in this housing crisis that we're facing here in King County, this is happening on a daily basis and with hundreds or thousands of people every year. And just picking it off one at a time is not going to solve the problem. And these are constitutional rights under the due process clause of the 14th Amendment, and it's important, and this is what Ex parte Young allows. I mean, this is a quintessential Ex parte Young case where you have a challenge to the constitutionality of a statute, the sheriff is an appropriate defendant because the sheriff has connection to the enforcement of that statute, the sheriff serves and executes those writs, and the sheriff is a state actor when doing so. That all makes sense to me. So your position on mootness is just that the reason we need to be able to go forward with this, I guess it's now you want to bring it as a class action here in federal court, is because every single time an individual person is faced with one of these 375 evictions, the whole thing will just run its course before the federal court could get around to resolving it? That's exactly right. This case falls under the inherently transitory exception that was announced in the Gerstein and Garrity cases by the United States Supreme Court. The Section 375 procedure is completed in a matter of days or weeks at most. The procedural due process violation occurs quickly and the ultimate deprivation of the constitutional right to occupancy and housing also occurs very quickly. Can you just articulate very crisply what your core procedural due process violation theory is? Is it that basically nobody should ever be evicted from their home unless there is a eviction process? There you always have to have a hearing before someone is actually thrown out on the street. Is your position that or is it rather that the defect with the 375 procedure is that the notice that the tenant is given, it doesn't clearly say how they can avail themselves of their right to request a hearing? Is that the problem or is it the former? It's both, Your Honor. So to be clear, there are really two problems with Section 375. The first is that Paragraph 4 of Section 375 allows writs to be issued without a hearing. And so our first argument is that you must have a hearing before the writ is issued. No matter what? No matter what. Just because the right to occupancy of your home is such a basic fundamental risk of erroneous deprivation. So it's just under that analysis, you always have to have a hearing. That's exactly right. Okay. And then the second argument is that under Paragraph 7F of Section 375, the notice form is woefully inadequate. And it really is for three reasons. First, it fails to inform tenants that they may raise legal and equitable defenses or setoffs to the payment of rent. Instead, what it says is you have two choices. You can either pay into the court registry the rent that's allegedly owed, or you can assert under penalty of perjury that the rent is not owed. That's what tenants are told. But there's a third option. The third option is that you might have equitable defenses that even though you owe the rent, you can't be evicted. Like what? So let me give you two examples. One would be habitability. So for example, it's cold winter and you haven't had any heat for a month. You might have an argument that you have a setoff to the rent that's allegedly owing. Or as in the case of our clients here, Moore and Shaw, they had arguments for reasonable accommodations for disabilities, such as on the timing of the payment of rent. Things like that. And you can assert those defenses even if you're not able to pay into court the past rent that's due? That's exactly right. And you can avoid eviction, but the notice form doesn't tell you that. The notice form also fails to inform tenants that they have a right to stay the writ until they have a hearing. And finally, the notice form fails to inform tenants that they have a right to a hearing. And so on that legal and equitable defenses, I would point the court to paragraph two of section 375. So right there in section 375, it says that you may be able to raise legal and equitable defenses, but the notice form doesn't mention that at all. Do you have any case law, either from this jurisdiction or elsewhere, that says that failure to outline all of the potential things that a defendant in this case might do is in itself an unconstitutional, technically a due process deprivation? Your Honor, I don't have something to that effect. Instead, what I would submit to the court respectfully is that you have to look at the balancing test under Matthews. And what we're saying is that when you look at the balancing test under Matthews, the failure to inform tenants of these things creates a substantial risk of erroneous deprivation. And that erroneous deprivation is of the highest degree. I mean, we're talking eviction. This is not a partial loss in a protected interest. This is a complete loss of that interest in the occupancy to the home. And so for that reason, we respectfully submit that on the face of it, it can be determined that there's a procedural due process violation. We also think there's an as-is challenge if additional facts need to be submitted. But on the face of it, we think that we meet it, that Ex parte Young allows us to go forward. And I'm going to go ahead and reserve the remainder of my time. Ex parte Young only allows you to go forward on the, if you will, the injunctive portion. You would agree that you can't get nominal damages? Yes, we would agree with that. Okay, all right. Do you want to save the balance of your time? I do, Your Honor. Thank you. Okay. Mr. Hackett, I think we saw you the other day in the trails case. Yes, Your Honor. You're looking well. How are you today? Doing well. This is my on-court performance, I hope, in front of this panel. Oh, it does, Danny. Okay. David Hackett, King County Senior Deputy, representing the King County Sheriff. The sheriff believes that the fundamental problem with this case is that the wrong party is being sued. This is not your typical Ex parte Young case because the sheriff is executing a court order. So essentially, it's that very rare case where a judge is essentially, through the sheriff, being brought before the Ninth Circuit on a case that should be appealed. So wait, you think that the entire King County Superior, or not King County, I don't know what, this is a state statute, I guess, but the entire Superior Court bench, or whatever bench officers handle these eviction proceedings? Whatever judge handled. So essentially, I don't want to go too far, but what we have is a court order. Hang on, hang on. I want to bring a facial challenge that is going to invalidate the statute throughout, I guess, again, here it's the county, but let's just say I'm going to focus on through this process because I think it's unconstitutional. So who do I sue to get an injunction that forbids any state Superior Court judge from relying on this statute to evict someone? Well, I appreciate the court's question. I think that that fits into the larger question of, is this case moved? No, I just want an answer to the question. You said that they've named the wrong party as the defendant. I'm asking you, so who's the right party? The right party is the landlord that sought the statute? No. Under Washington law, when you challenge the constitutionality of the statute- I want an injunction that forbids this statute from being enforced in this county. I can guarantee you that the landlord is exactly the wrong defendant to obtain that relief. So tell me, who can I get an injunction against to prevent this statute from ever being invoked to evict someone? I think an injunction against a statute would be a misguided way to approach it. The proper way, I believe, to approach it that would bring about exactly what plaintiffs seek is to seek that declaratory judgment action against the statute in the context of the issue. What party? That's what the question is. Yes, and under state law, when you challenge the constitutionality of a statute, you're required to bring in the Attorney General. The Attorney General would then defend that statute, as Mrs. Moore did. She brought the constitutional challenge to the statute. She obtained a stay of the writ of restitution, which gives plenty of time to review the matter, to address it, and to determine whether the statute is valid. If that declaratory judgment is entered that the statute is invalid, at that point, subsequent courts that enter it, unless it stayed, are on notice that there's a problem. More importantly, the sheriff now knows that it may not be a facially valid order. You heard your opponent's argument, which was to say, fine, I'm in this 375 proceeding, I get a stay of the execution of the writ, or the warrant, whatever it is. I ask for broad declaratory relief that says the statute is facially invalid, and let's say that the Superior Court judge gives me that relief and says, you're right, I declare that this is facially invalid. Their argument is that, but that's not binding on anyone else except the parties to this case. How have I accomplished my objective as a litigant? Very quickly, it goes up to the Court of Appeals, and at that point, it becomes binding. You obtain a ruling, it becomes binding. It can go straight to the Supreme Court, it becomes binding. So you're saying that the appellate process is the way you get a binding result in this case? Yes, and I think it's because of the nature of the young proceeding that's being brought here. This is where I want to focus on this question of judicial immunity, because I think it's what resolved this case. The judicial immunity is important because Ex Parte Young doesn't provide you a cause of action. It simply gets you around the 11th Amendment. Once you're around the 11th Amendment, you still have to have a cause of action. That cause of action is Section 1983. That's how you vindicate your due process rights. Now, in that situation, when you're under 1983, then you are subject to the Federal Judicial Improvement Act, which essentially overturned statutory rulings by the Supreme Court in Pulliam. That's essentially not dealt with in appellant's reply brief. In Coverdale, this Court determined that an officer that is simply executing in accord with the terms of that order, the Court's order, is entitled to quasi-judicial immunity. But, counsel, with respect, hasn't Coverdale really been totally undermined by Antoine and Breyers and Anderson and the Kalina v. Fletcher, two Supreme Court cases? No, I don't believe so. I don't believe that particularly Kalina v. Fletcher, which I'm familiar with, undermines Coverdale. I think Coverdale does recognize that narrow situation, not when you're mis-executing an order, not when you're asking for an order as a declarant, but when you're simply being handed an order, either as a warden for a prison, a King County jail director, or somebody else, and you're asked simply to execute that order. That type of judicial immunity is still fully available. But under Burton, haven't we indicated after these other cases that unless the officer is exercising a discretionary judgment, that they're not entitled to judicial immunity? I think that Coverdale remains the case on point and still good law. I think there is... Doesn't Miller change all that, though? Doesn't Miller require that there be some quasi-judicial immunity for the sheriff? I think in a lot of ways in the Ninth Circuit and possibly in other circuits, you have two chains of quasi-judicial immunity that seem to be not terribly aware of each other. One is the type of quasi-judicial immunity that Your Honor mentions, where you're talking about things like parole boards, where they exercise discretionary acts. But the other is the clerk of your own court, the sheriff that's asked to do the writ, the warden that's supposed to take the prisoner. Without those officials being able to give full faith and credit and follow the precise terms of a court order, in Coverdale, in Henry, in those cases, it's been recognized courts essentially won't be able to function. These folks are serving as arms of your court, and as long as they are following the court's order, they're entitled to, I think what's properly termed as quasi-judicial immunity. And that is sufficient to bring them within the amendments to 1983, which precludes injunctive relief against judges unless a court order has been violated first. That's also, frankly, consistent with how the Supreme Court discussed the common law in Pulliam, to the extent that I think it says too much to say that judges have do not have absolute immunity when they're acting in their official capacity. But with respect, Counselor, you're talking about judges. We're not talking about a judge here. We're talking about a sheriff who's following a writ. And the sheriff and the judge are quite different, are they? Now, look at the McMillan versus Monroe County the Supreme Court decided, involving the Alabama sheriff. In our own cases, such as Burton, I have real trouble with this has no discretion in this thing is entitled to judicial or quasi-judicial immunity. Maybe there's something else, but I don't follow your logic that the sheriff in this case is entitled to that type of immunity. Why am I wrong? I think you're wrong because Coverdale controls, and Henry is good authority as well. And that's just for that very narrow function of doing what the court says. And I think a sheriff following a writ is in the same position as a warden accepting a prisoner. Those types of ministerial actions, frankly, where they are simply doing what the court said to do. Now, if the sheriff used excessive force while doing that, that would be a problem. If the sheriff was applying for a warrant in misrepresented facts, that would be a problem. If the court had issued a warrant and that warrant was did not meet the descriptions, the Ninth Circuit has determined that is suable. But for the simple act of doing exactly what the court said, which happens three and a half thousand times in this county every year, the sheriff gets immunity for that under Coverdale. I'd like to turn to this question in McMillan, however, because even if immunity doesn't apply, Young does not provide a vehicle for getting to this case. And that's important because if Young doesn't apply, then plaintiffs must satisfy Monell, which they do not. The sheriff is not the moving force in these proceedings. It is the it is the court. And that's so that's another way you can dismiss this case or affirm dismissal. If Young doesn't apply and Monell controls, there is no allegation that the sheriff is the moving force. It has nothing to do with this case. I mean, maybe you take a second to try to explain your theory. But I mean, I read your briefs and I just found that wholly unpersuasive. So what elaborate if sure, if if the sheriff is a municipal officer, which we believe he is under Monell, they are required to prove that the sheriff is the moving force behind the violation and the cases we cite, I think go for that proposition that a sheriff that is doing something because basically forming a nondiscretionary act due to a judicial order. That person is not the moving force. Essentially, this is this is a way around lots of things to be able to essentially sue the court directly. So Monell is important. If it is a 1983 action against a municipal officer, Monell has to be satisfied. What if the sheriff is not a municipal officer, but rather is a state officer? If the then Monell would not apply in that situation, it would be a young case with a 1983 action. Monell does not apply to state office. In that case, if he's a state officer, Monell doesn't apply. You can't get damages. And I think they've conceded that. But you can't get an if they're not determined to be a judicial state. That's right. But I'd like to look at those young criteria because well, let me let me ask you a question. You've argued all along that he's just carrying out the duties of the Superior Court. Yes. Well, doesn't that make him a state officer then? The Superior Court is a state court, right? As the attorney general points out, essentially, our superior courts are mixed. They have aspects of county. They have aspects of state. But I the Superior Court is a state court or a county court, simply executing the order of a court doesn't make you the agent of that court per se. What it makes you is someone who is charged with executing the order of a court. And a simple example would be the head of the King County Jail. The head of the King County Jail takes prisoners because they are ordered by the Superior Court to do so. No one would argue the head of the King County Jail is a state officer. But the jail isn't doing the duty of the Superior Court by jailing someone, but the sheriff is doing the duty of the Superior Court when they're serving a writ. Under state law, of course, the sheriff is, as we pointed out in our brief, much different than Alabama, identified as a county official. The state law, the RCWs, assign to that county official the duty to attend to the court and the duty to hold out these writs. So I think perhaps it's a fine distinction, but it's an important one. And it's that distinction that as a county officer, you know, myself as a county officer, as a deputy prosecutor, I have certain things I do on behalf of the state, but I am still a county prosecutor. Same with the sheriff. The sheriff is given duties to enforce state law. He's given duties to execute writs. He's given duties to lots of things. But I think McMillan makes it clear that if you are simply following a legal obligation, that's not enough to make you a state officer. But McMillan also makes clear, I think, that you've got two principles that are going to guide you. You have to look at the facts of the individual case. I'm sure you would say that would be true here. So aren't we forced with looking at what the sheriff does here, whether it's a state function, whether it's a local function who controls, and importantly, whether the sheriff has discretion or is simply carrying out the instructions as given by the county officer following instructions is a county officer. But I'd like to point out the bind this puts plaintiffs in. They lose either way. If the sheriff is a state officer, because he is acting as an arm of the superior court, which is a state court, then the sheriff's entitled to the derivative immunity of that court, thus coming under the judicial act. Even if he's not exercising discretionary judgment in doing that. Yes. And I think the other key there is the cases from the Ninth Circuit have not analyzed the judicial amendments to 1983. And those amendments make it very clear that the Pulliam rule is disavowed in the sense that when you are suing a judicial officer, you can't do it on the first time. And during that time, you don't get injunctive relief, you don't get fees. You can only do it if that officer continues to violate a order of the court. Now, I suppose it could be that if the superior court enters an order that this is unconstitutional and it doesn't end up being stayed by our court of appeals and the sheriff continues to exercise writs of restitution, at that point, maybe we're properly drugged in front of federal court. That I could see a good argument for. Your argument is that in this case, they just acted too soon. They have the first instance, they're suing the sheriff for doing this, but this is the first time under the judicial amendments, 1983, you can't do it. It's premature, right? If Ms. Moore's motion had been followed up on in superior court, this issue would be resolved and none of us would be here. Absolutely. You followed up meaning going all the way to the court of appeals? Well, had the superior court rule, go to the court of appeals, go to the Supreme Court, whatever needed to be done to make that ultimately a final decision. But in that situation, once the sheriff has a superior court order saying it's unconstitutional to serve writs of restitution from a judge in our county, I doubt very much that the sheriff would be continuing in that unless there was some type of appropriate stay and seeking further guidance from the court of appeals. That's what you think the sheriff probably would do? That would be my advice, yes. That'd be your guess. And if the sheriff doesn't, then you've got time number two. The judicial amendments of the 1983 are essentially met and someone can bring an action against us at this point. But I'm a fan of the movie Working Girl. A long time ago, the guy wanted to know how to get his National Media Corporation going. And remember, there was the story about when your bus is stuck in the tunnel, you just let the air out of the tires, and that's how it gets through. Plaintiffs need to let a little air out of their tires so they can get through that tunnel, get that ruling very simply, straightforward on whether this law is constitutional, and that's done down the street in the superior court. Thank you, Your Honor. On that, any questions my colleagues have? Thank you very much, counsel, for your argument. So appellants have some rebuttal time. Thank you, Your Honor. I'd like to start off by addressing this notion that the State Appellate process is sufficient. It's not. The sheriff's not a party in state court. And let's see how this would play out. So Moore and Shaw get a ruling from the court that the statute's unconstitutional. Who's appealing? The landlord. Why would the landlord want to appeal that ruling and spend a bunch of time and money when it can just move on and continue to do what it does? And certainly, why would it want to put forward the risk that for all of its properties, it can't follow the 375 procedure? I just don't see the court doing that. But the most important—I mean, the landlord doing that. The most important thing, though, is that the sheriff's not a party to that case. The state is not a party to that case. The relief that we are seeking here is important constitutional relief against the state with the sheriff standing in the shoes of the judicial— Let me ask you two things. First of all, Mr. Hackett indicated that the appropriate defendant here should have been the attorney general. What's your response to that? My response is that under Ex parte Young, we satisfy all three requirements for going forward. And the sheriff is an appropriate defendant because the sheriff has connection to the enforcement of the law that's being challenged. But you're trying to invalidate a state statute. And if I understand it correctly, under Washington law, the normal procedure when you want to do that is to sue the attorney general. Do you disagree with that? I don't. I don't. I would put it this way. I think that we had the option to sue the attorney general as well. But that—I'm unaware of any authority that says because there's another defendant out there that might even be a better defendant, that that's something that's taken into account for purposes of the Ex parte Young analysis. Then the second question is that your opponent suggested that the judicial amendments to 1983 would require you to, if in effect, have what you've done here, get a result, and then if there's a repeat action by the official, in this case the sheriff, that then you sue. What's your response to that? Two reasons that judicial immunity doesn't apply under Section 1983. The first being that this is a suit— what I'm asking is, procedurally, why you didn't file a second—let this one go, then you say you did it again, so we're filing this second time. What's your response to that? Well, the first reason being that we wouldn't be able to get an injunction. We would only have declaratory relief, and we think the injunction is just as important, if not more important, to stop the service and the execution of the writs of restitution. But judicial immunity doesn't apply for two reasons. The first being that we've sued the sheriff as a state actor, and Kentucky v. Graham and other decisions cited in our briefs make clear that in an official capacity lawsuit, judicial immunity is not available. The only immunity that's available to the sheriff who is standing in the shoes of the state is sovereign immunity, and Ex parte Young, of course, gives you an exception around that. And then second, it's a ministerial act. There's no discretion whatsoever. The sheriff is simply doing what it is told, and as you pointed out, the sheriff has argued that in its briefs throughout this case. We are obligated to serve writs of restitution that are issued by state courts of law, and that's what we're doing. There's no discretion whatsoever, so therefore, judicial immunity doesn't apply. Now your time is up. Let me ask my colleagues if either has any additional questions. I'm sure you have a lot more to say, but we thank you all for your argument. It's been very, very helpful and interesting case. The case just argued is submitted.
judges: M. Smith, Watford, Rayes